**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                   :
JOHN PARRILLA,                     :
                                   : Civil Action No. 11-507 (NLH)
            Petitioner,            :
                                   :
       v.                          :         **O P I N I O N**
                                   :
DONNA ZICKEFOOSE,                  :
                                   :
            Respondent.            :
_____:

**APPEARANCES**:

    JOHN PARRILLA, Petitioner Pro Se
    #40360-050
    FCI Fort Dix
    P.O. Box 2000
    Fort Dix, New Jersey 08640

    PAUL A. BLAINE, AUSA
    OFFICE OF THE U.S. ATTORNEY
    Camden Federal Bldg. & U.S. Courthouse
    401 Market Street, 4th Floor
    Camden, New Jersey  08101
    Attorney for Respondent

**HILLMAN, District Judge**

    Petitioner John Parrilla ("Parrilla"), a federal prisoner currently confined at the Federal Correctional Institution Fort Dix in Fort Dix, New Jersey ("FCI Fort Dix"), submitted a petition for a writ of habeas corpus, pursuant to 28 U.S.C. §

2241,[1] on or about January 28, 2011, seeking an Order requiring that the Federal Bureau of Prisons ("BOP") grant Parrilla "the maximum amount of time in [an] RRC"[2] pursuant to the Second Chance Act of 2007 ("SCA").  (Petition at pg. 18).  The named respondent (hereinafter, the "Government") is Donna Zickefoose, Warden at FCI Fort Dix, where Parrilla was confined at the time he filed this petition.  On March 7, 2011, counsel for the Government filed a motion to dismiss the petition on the ground that Parrilla deliberately failed to exhaust the available administrative remedies before commencing this action, in contravention of controlling decisional law.  Parrilla has not responded to the Government's motion.

Because it appears from a review of the submissions that Parrilla did not attempt to exhaust his administrative remedies

---

[1]   Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
       * * *
(c) The writ of habeas corpus shall not extend to a prisoner unless-... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ....

[2]   "RRC" refers to a Residential Reentry Center, more commonly known as a halfway house.

before filing this petition, the petition will be dismissed without prejudice accordingly.

## BACKGROUND

**A.    The Second Chance Act**

Residential Re-Entry Center ("RRC") assignments are governed by 18 U.S.C. § 3624(c)(1), which was amended in 2007 by the Second Chance Act, Pub. L. No. 110-199, effective April 9, 2008. In essence, the Act extended the maximum amount of time that the Bureau of Prisons ("BOP") may place an inmate in an RRC from 180 days to twelve months.

Regularly referred to as the "Second Chance Act," the amended statute provides, in pertinent part:

> (1) In General.-The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.
>
> (2) Home confinement authority.-The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.
>                         ...
> (4) No limitations.-Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.
>                         ...
> (6) Issuance of regulations.  The Director of the Bureau of Prisons shall issue regulations pursuant to this subsection not later than 90 days after the date

>of the enactment of the Second Chance Act of 2007, which shall ensure that placement in a community correctional facility by the Bureau of Prisons is-
>
>>(A) conducted in a manner consistent with section 3621(b) of this title;
>>
>>(B) determined on an individual basis; and
>>
>>(C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community.

18 U.S.C. § 3624(c). As noted in the statute, the BOP was ordered to issue regulations not later than 90 days after the date of the enactment of the Second Chance Act, to ensure that placement was conducted consistently with § 3621(b) of the statute, that the determination was individualized, and that the duration of placement was sufficient. Section 3621(b) states:

>(b) Place of imprisonment. The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering-
>
>>(1) the resources of the facility contemplated;
>>(2) the nature and circumstances of the offense;
>>(3) the history and characteristics of the prisoner;
>>(4) any statement by the court that imposed the sentence- (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and
>>(5) any pertinent policy statement issued by the Sentencing Commission pursuant to Section 994(a)(2) title 28 . . .

> . . . Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment.

On April 14, 2008, the BOP issued a "Memorandum for Chief Executive Officers", providing staff guidance for implementing the Second Chance Act. The memorandum indicated that the BOP's then-existing time frame on pre-release community confinement placement was no longer applicable and should not be followed, that certain adjustments were necessary to the Program Statement 7310.04 concerning review of inmates for pre-release RRC placement, and that each inmate's pre-release RRC decision must be analyzed and supported under the § 3621(b) factors, cited above. Among other guidelines, the memorandum provided:

> While the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less. Should staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager.

BOP Memo, April 14, 2008, as cited in Strong v. Schultz, 559 F. Supp.2d 556, 562 (D.N.J. 2009).

Subsequently, the BOP issued the required regulations, effective October 21, 2008, setting forth procedures for evaluating inmates' placement decisions to RRCs or home

5

detention.  See 28 C.F.R. §§ 570.20-570.22.  The regulations do not include the requirement in the April 14, 2008 memo for approval from the Regional Director for pre-release RRC placement beyond six-months.[3]

---

[3] Title 28 of the Code of Federal Register, section 570.22 states: "Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part."

The time frames noted are set forth in section 570.21, which states:

> (a) Community confinement. Inmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months.
>
> (b) Home detention. Inmates may be designated to home detention as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed the shorter of ten percent of the inmate's term of imprisonment or six months.
>
> (c) Exceeding time-frames. These time-frames may be exceeded when separate statutory authority allows greater periods of community confinement as a condition of pre-release custody.
>
> 28 C.F.R. § 570.21

**B.**     <u>**Factual Background**</u>

Parrilla was sentenced on September 9, 2010, in the United States District Court for the Eastern District of Pennsylvania, to serve a 46 month prison term for attempted bank robbery in violation of 18 U.S.C. § 2113(a).  He is an inmate at FCI Fort Dix, having been designated there by the BOP on October 12, 2010.  Parrilla's projected good conduct release date is May 16, 2012.  (<u>See</u> Declaration of Tara Moran ("Moran Decl.") at Exhibit 1).

On November 4, 2010, Parrilla's Unit Team at FCI Fort Dix met with him to conduct a Program Review.  During the review, the topic of RRC placement was discussed, and the Unit Team advised Parrilla that it would recommend a 60-90 day RRC placement for Parrilla.  (Declaration of Laurie Alexander, ¶¶ 5-6).  The Unit Team's recommendation was formalized on February 8, 2011, in the appropriate documentation for the Warden's signature to be used in eventually forwarding the recommendation to the Community Corrections Manager at the appropriate time in the future.  (<u>Id</u>., ¶¶ 7-8, Attachment 3).

Parrilla filed this habeas petition on January 28, 2011.  Parrilla admits in his petition that he has not filed a request for administrative remedy before commencing this action because he believes the administrative remedy process would be futile.  (Petition at pg. 14).  On March 7, 2011, the Government filed a motion to dismiss the petition based on Parrilla's failure to

7

exhaust his administrative remedies.  The Government confirms that Parrilla has not filed any administrative remedy request while in BOP custody.  (Moran Decl., ¶ 3, and Ex. 2).

### DISCUSSION

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F. Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals.  See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where

it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

In Snisky v. Pugh, the petitioner did not deny his failure to exhaust; however, the Court excused exhaustion because the petitioner was scheduled to be released, and his claim was clearly without merit. See 974 F. Supp. 817, 819 (M.D. Pa. 1997), rev'd on other grounds, 159 F.3d 1353 (3d Cir. 1998). The court recognized that exhaustion could be excused where it would be futile. See id. In Snisky, the court found that the BOP "unequivocally" would deny the petitioner's relief, and he would return to the district court after the denial. Thus, the court addressed the claims on the merits.

Likewise, in Ferrante v. Bureau of Prisons, the court found that if the petitioner's claim were meritorious, he would be released to a halfway house relatively soon; therefore, dismissing the petition for lack of exhaustion would be futile. See 990 F. Supp. 367, 370 (D.N.J. 1998)(citing Snisky, 974 F. Supp. at 819-20). Further, the court held that the petitioner's claim was clearly without merit, so that the exhaustion issue need not be reached. See id. See also Fraley v. Bureau of

9

Prisons, 1 F.3d 924, 925 (9th Cir. 1993)(stating that exhaustion was not required because it was futile, as Regional Director would "almost certainly" have denied request, and term of imprisonment was completed).

In this case, Parrilla admits that he did not exhaust administrative remedies.  He maintains that he should be excused from pursuing administrative relief because it would be futile.  In particular, Parrilla asserts that there would be insufficient time for him to complete the administrative review process before his hypothetical twelve month RRC placement date.  Further, he contends that the futility doctrine is applicable here because the BOP has adopted an inflexible placement policy that violates the SCA.

The Government argues that Parrilla had ample time to utilize the administrative remedy process after the Unit Team made its formal recommendation on February 8, 2011.  Instead, Parrilla bypassed the administrative process purposely.  Typically, courts have not applied the futility exception based on a timeliness argument.  See Velez v. Zickefoose, 2010 WL 5186158 at *3-4 (D.N.J. Dec. 15, 2010)(the self-serving strategy of bypassing administrative remedies and arguing futility - because there is insufficient time for those remedies to run their course - has never been rewarded by the courts), quoting Shoup v. Schultz, 2009 WL 1544664, *4-5 (D.N.J. June 2, 2009)(the

10

self-described timing calamity, if any, was of the inmate's own making, and such hypothetical self-inflicted distress cannot serve to excuse the exhaustion requirement).  See also Winters v. Warden, FCI Ft. Dix, 2009 WL 2928549, *3 (D.N.J. Sept. 10, 2009); Malvestuto v. Martinez, 2009 WL 2876883, *3 (M.D. Pa. Sept. 1, 2009)("Exhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates he will be unsuccessful in his administrative appeals before the twelve-month pre-release mark, which is simply a statutory maximum and not a mandate.").

    Likewise, courts have found the futility argument unavailing where the prisoner simply asserts that the BOP has an inflexible placement policy and won't consider twelve month RRC placements. See, e.g., Levon v. Zickefoose, 2010 WL 3025135, *4 (D.N.J. July 30, 2010)(rejecting futility argument based on the inmate's presumption that his administrative grievance would be denied and concluding that a full administrative record was necessary for the Court to determine whether the RRC placement decision had been made in accordance with the law); Craig v. Zickefoose, 2010 WL 234908, *3-4 (D.N.J. Jan. 15, 2010)(petition dismissed for failure to exhaust where the inmate alleged that exhaustion should be excused because he was challenging the BOP policy of not affording more than six month RRC placements); Brown v. Grondolsky, 2009 WL 2778437 (D.N.J. Aug. 31, 2009)(dismissing

petition for failure to exhaust where there was no demonstrable record of such BOP practice); Shoup, 2009 WL 1544664 at *4 ("While Petitioner invites this Court to reach an umbrella conclusion that no exhaustion of administrative remedies is ever required for any litigant raising a 2241 challenge on the grounds of the Second Chance Act, this Court disinclines the invitation and finds that such holding would fly in the face of the Third Circuit's teachings - as to the firmness of the exhaustion requirement").

Therefore, this Court sees no reason to excuse Parrilla's failure to exhaust administrative remedies.  See Velez, 2010 WL 5186158 at *3 ("the exhaustion requirement is not excused lightly"); Maddox v. Zickefoose, 2010 WL 2762242, *4 (D.N.J. July 12, 2010); Gardner v. Grondolsky, 2009 WL 5103209, *2-3 (D.N.J. Dec. 17, 2009).  Accordingly, the Court will dismiss the Petition without prejudice to the filing of a new § 2241 petition after Parrilla exhausts administrative relief.

**CONCLUSION**

For the foregoing reasons, Respondent'S motion to dismiss the petition shall be granted and the petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2241, is hereby dismissed without prejudice for petitioner's failure to exhaust administrative remedies.  An appropriate Order accompanies this Opinion.

      /s/ Noel L. Hillman
NOEL L. HILLMAN
United States District Judge

Dated: September 30, 2011

At Camden, New Jersey

13